## J. E. HOPE *v.* F. A. HURT, ADMR.

1. FOREIGN ADMINISTRATOR. *Debt due estate. Prerequisite to suit.*
   A foreign administrator cannot sue in the courts of this State for a debt due the intestate until he complies with Code 1880, § 2091, which requires him to file in the chancery clerk's office a certified copy of the record of his appointment and a certificate of his liability to account for the debt.

2. SAME. *Mode of compliance. Peculiar practice in foreign State.*
   Letters of administration issued by a County Court in Tennessee are, however, when properly authenticated, and accompanied by the certificate of accountability, a compliance with the statute, because in that State they alone constitute the administrator's appointment.

3. SAME. *Records of courts in other States. Authenticated copies.*
   Such letters, like the records of all courts in other States, are admissible in the courts of this State only when authenticated according to the Federal Statutes, there being no legislation in this State upon the subject.

4. SAME. *Neglect of prerequisite. Objection. When made.*
   Objection that such administrator has failed to comply with the statute can be made for the first time in the Circuit Court on appeal from a Justice's Court.

5. SAME. *Order overruling motion. Res adjudicata.*
   Overruling a motion to dismiss the suit for that reason, does not prevent the Circuit Court from rehearing it at a subsequent term and reversing the former ruling.

6. SAME. *Method of objecting. Plea to character.*

    The objection does not affect the character as administrator in which the plaintiff sues, and therefore need not be made under oath as provided in Code 1880, § 1633.

APPEAL from the Circuit Court of Lafayette County.

Hon. J. W. C. WATSON, Judge.

*Edward Mayes*, for the appellant.

Except under authority conferred by our statute the administrator appointed in Tennessee could not sue in this State. *Wilkins* v. *Ellett*, 9 Wall. 740; *Klein* v. *French*, 57 Miss. 662. Suit is authorized by Code 1880, § 2091, but on specified conditions, which were not complied with in this case. Nothing was produced except a copy of alleged letters of administration, not certified according to the act of Congress. Failure to raise the point in the Justice's Court did not estop the defendant, for the defect could not be cured, and on appeal the trial is *de novo. Poston* v. *Mhoon*, 49 Miss. 620; *McCleary* v. *Anthony*, 54 Miss. 708; *Brown* v. *Ashford*, 56 Miss. 677. Renewal of the motion to dismiss at a subsequent term was proper, in order to obtain a bill of exceptions and to allow the judge to correct his former ruling. *Nesbitt* v. *Dallam*, 7 Gill. & J. 494; *Stimpson* v. *Cummings*, 15 Vt. 787; *Singleton* v. *Kennedy*, 9 B. Mon. 222; *Pearson* v. *Rawlings*, 1 East, 405.

    *Sullivan & Sullivan*, for the appellee.

The motion after being once decided could not be renewed. The question was *res adjudicata. Wilson* v. *Owens*, 1 How. 126; *Phillips* v. *Lane*, 4 How. 122; *Agnew* v. *McElroy*, 10 S. & M. 552; *Shattuck* v. *Miller*, 50 Miss. 386; *Vicksburg Railroad Co.* v. *Ragsdale*, 51 Miss. 447; *Scully* v. *Lowenstein*, 56 Miss. 652. In Tennessee, however, the letters of administration constitute the appointment, and their production before the chancery clerk, with the certificate of liability, was a compliance with Code 1880, § 2091. An oath was necessary in order to put in issue the plaintiff's character as administrator. Code 1880, § 1633. *Thornton* v. *Alliston*, 12 S. & M. 124; *Saffold* v. *Barnes*, 39 Miss. 399; *Moore* v. *Knox*, 46 Miss. 602; *McBride* v. *Kilgore*, 55 Miss. 242. By not objecting in the Justice's Court, the defendant waived this point.

CHALMERS, C. J., delivered the opinion of the court.

An adminstrator appointed in Tennessee brought suit before a justice of the peace in Lafayette County upon a claim alleged to be due his intestate here, and recovered judgment. An appeal was taken to the Circuit Court, and there the defendant moved to dismiss the suit because the plaintiff had not, before suit brought, filed in the chancery clerk's office a duly and properly certified copy of the record of his appointment as administrator in the State of Tennessee, and of his liability to account there for the claim sued on, as required by Code 1880, § 2091. This motion was overruled at the May Term of the Circuit Court, upon the ground that no motion to this effect had been made in the Justice's Court, the circuit judge being of opinion that such motion could not be entertained by the Circuit Court if not first made in the lower court. To this action of the court no bill of exceptions was filed, so that the record before us fails to disclose the record from Tennessee upon which the motion at the May Term was based, but there having been a mistrial at the May Term, the motion was renewed at the November Term, both for the purpose, as we gather from the arguments of counsel, of procuring a bill of exceptions and for the purpose of giving the court an opportunity of revising its own decision. This new motion was likewise overruled by the court, upon the double ground that no motion on the subject had been made in the Justice's Court, and that the matter had become *res adjudicata* and passed beyond the power of the court by the decision at the former term.

We do not think that either of these grounds is maintainable. Trials, in the Circuit Court, of appeals from the Justice's Court are *de novo*, and a party does not lose his right to object in the superior tribunal that the plaintiff has failed to comply with a statutory prerequisite to the maintenance of his suit, because he omitted to make the objection in the Justice's Court, nor did the Circuit Court lose power to pass upon this question at the November Term because it had decided it wrongly at the May Term.

If the motion to dismiss had been sustained, it would have been a final disposition of the case, and could after the term only have been reviewed on appeal; but the order overruling

the motion was manifestly not a final judgment, nor did it purport to make a final disposition of the case. It was, therefore, neither appealable nor would it support a technical plea of *res adjudicata*, since it is essential to such a plea that there shall have been rendered a final judgment upon the merits of the controversy. In determining the right of a judge to vacate and reverse a ruling made at a former term, it may not be an unfailing test to say that he can do so as to all orders from which appeals cannot be prosecuted, or which cannot be made the basis of a plea of *res adjudicata;* but certainly this must generally be the correct test. If a judge should become convinced that he has at a former term made an erroneous ruling, which if decided correctly would have been decisive of the case, what sound reason suggests that he shall persist in the error, or what is there to prevent him from retracing his steps? To go on is simply to ensure a reversal of the final judgment to be reached, and thus give to the party injured by the erroneous ruling the double advantage of getting a verdict or final judgment, if he can, despite the ruling, and a certain reversal if he cannot. We think that in this case the court did not lose the power by the adjudication at the May Term to reverse its order made at that term, and if satisfied in November that the former ruling was erroneous, it should have reversed it.

But was that ruling erroneous? It is argued that it was not for two reasons : first, that the motion to dismiss on the ground that the Tennessee administrator had not filed the proper certificate of his qualification and of his liability to account was an attack upon the character in which he sued, and that such attack could only be made under oath, by virtue of Code 1880, § 1633 ; and, second, that the record from the Tennessee court was in fact a sufficient compliance with our statute.

We do not think that an objection that a foreign administrator has failed to comply with the requirements of our statute authorizing him to sue in our courts is an attack upon the character in which he sues, and as such must be made under oath. On the contrary, it does not question his character as administrator, but raises only the objection that, granting that he is what he claims to be, *to wit,* the administrator

of the intestate duly appointed according to the laws of the State granting the letters, he has failed to do an act which our laws require of him because of the fact that he is such administrator. The statute proceeds upon the assumption that he is the duly appointed administrator in the foreign jurisdiction, and without questioning his character as such declares, that notwithstanding this fact he must comply with certain requirements in order to sue our citizens. The allegation that he has not done this is not an attack on the character in which he sues, but an allegation that he has not complied with our laws.

Was the record from the County Court of Shelby County, Tennessee, in due form? It consisted of a copy of the letters of administration granted to the plaintiff and a certificate that he was in that court accountable for the claim sued on, but it was certified only by the clerk of the court under his seal of office and lacked the authentication of the presiding judge as required by the Act of Congress prescribing the mode of authenticating the records of the courts of one State to be used in another.

As we understand the Tennessee statutes, Code of Tennessee 1858 (Meigs & Cooper), § 2201 *et seq.*, the letters of administration when issued of themselves constitute the appointment of the administrator, instead of being, as with us, the private evidence or *indicia* of the appointment, and therefore these letters, if properly authenticated, were a sufficient compliance with the requirements of Code 1880, § 2091. But was the authentication defective because not in accordance with the Act of Congress?

It is said by Professor Greenleaf (1 Greenl. Evid., Redfield's ed., § 505), that the mode of authentication prescribed by Congress is not exclusive of any other which the States may see proper to adopt, and the statement seems to be borne out by the decisions of those States which have prescribed other methods of authentication, but our State has not done this. By § 1622 of the Code of 1880 a mode of authenticating private writings which have been legally recorded in other States is provided, and by § 1629 it is enacted that the certificate or attestation of any person purporting to be a public

officer of another State shall be deemed *prima facie* evidence of his official character in the courts of this State, but nowhere do we find any mode of authenticating the records of the courts of other States laid down by our lawgivers. We must construe this as indicative of the intention of the legislature to adopt the Act of Congress on this subject, or rather of a legislative willingness to leave the matter to be controlled by the federal legislation on the subject, and such we think has been the professional understanding and practice in the State.

It follows from these views that the action of the Circuit Court on the motion to dismiss the suit was wrong. It is therefore reversed, and this court proceeding to render such judgment as the lower court should have rendered, hereby dismisses the suit at the cost of the plaintiff (appellee) in both courts.                              *Judgment accordingly.*